Nichols, C. J.
The petition in this case and demurrer thereto present the question whether an award of compensation from the state insurance fund, under Section 35 of the workmen’s compensation act (103 O. L., 72), to a wholly dependent person vests in the dependent when the award is made, so that, in case of the death of such dependent, his or her personal representative is entitled to the balance, if any, remaining unpaid.
*435 The original Ohio workmen’s compensation act was passed May 31, 1911 (102 O. L., 524). Its purpose, well expressed in its title, was: “To create a state insurance fund for the benefit of injured, and the dependents of killed employes, and to provide for the administration of such fund by a state liability board of awards.”
This act was optional or elective in principle. On February 6, 1912, its constitutionality was upheld by this court in the case of State, ex rel., v. Creamer, 85 Ohio St., 349. On September 3, 1912, a constitutional amendment was adopted by the people of Ohio (Section 35, Article II) authorizing the passage of laws providing for a state fund to be created by compulsory contribution thereto by employers and administered by the state.
Pursuant to this authority the legislature passed the present act (103 O. L., 72). This act is in effect an amendment to the act of 1911, the principal changes being that it is compulsory as to all employers employing five or more workmen, and optional as to those employing less.
Section 35 of the act, so far as the question before ■the court in this case is concerned, may be said to be identical with Section 28 of the old law.
The present act was the result of much thought and careful consideration of the operation of workmen’s compensation laws of other states and foreign countries and of the administration of the plan in Ohio under the original law. It made the compensation plan more workable and efficient and provided fully for the administration of the act in all its features by the state liability board of *436 awards, and may be said to be a model of legislative expression in clarity and comprehension.
For convenience the board in charge of the administration of the fund will be referred to in this opinion as the board of. awards rather than as the industrial commission of Ohio, for the commission, in matters pertaining to its administration of the workmen’s compensation fund, acts as the state liability board of awards.
Section 14 of the act defines the terms “employe,” “workman” and “operative” as used in the act.
Section 21 provides in part: “Every employe mentioned in subdivision one of section fourteen hereof, who is injured, and the dependents of such as are killed in the course of employment, * * * provided the same was not purposely self-inflicted, * * * shall be entitled to receive * * * from the state insurance fund, such compensation for loss sustained on account of such injury or death, * * .* as is provided by sections thirty-two to forty inclusive.”
Section 35 provides for compensation in case of death, and is as follows:
“In case the injury causes death within the period of two years, the benefits shall be in the amounts and to the persons following:
“1. If there be no dependents, the disbursements from the state insurance fund shall be limited to the expenses provided for in section forty-two hereof.
“2, If there are wholly dependent persons at the time of the death, the payment shall be sixty-six and two-thirds per cent, of the average weekly *437 wages, and to continue for the remainder of the period between the date of the death, and six years after the date of the injury, and not to amount to more than a maximum of thirty-seven hundred and fifty dollars, nor less than a minimum of one thousand five hundred dollars.
“3. If there are partly dependent persons at the time of the death, the payment shall be sixty-six and two thirds per cent, of the average weekly wages, and to continue for all or such portion of the period of six years after the date of the injury, as the board in each case may determine, and not to amount to more than a maximum of thirty-seven hundred and fifty dollars.
“4. The following persons shall be presumed to be wholly dependent for support upon a deceased employe:
“(A) A wife upon a husband with whom she lives at the time of his death.
“(B) A child or children under the age of sixteen years (or over said age if physically or mentally incapacitated from earning) upon the parent with whom he is living at the time of the death of such parent.
“In all other cases, question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employe, but no person shall be considered as dependent unless a member of the family of the deceased employe, or bears to him the relation of husband or widow, lineal descendant, ancestor or brother or sister. The word ‘child’ as used in this *438 act, shall include a posthumous child, and a child legally adopted prior to the injury.”
Under this section, in case of an injury resulting in death, the essential facts to be determined by the board of awards are: (1) That the employe was injured in the course of his employment; (2) that the injury was not self-inflicted; (3) that it resulted in death within the period of two years; and (4) the question of dependency at the time of death.
The last question is determined by the statute in the case of a wife living with her husband at the time of his death, and children under the age of sixteen living with the parent at the time of death of such parent. Such persons must be presumed to be wholly dependent for support on the deceased employe. All other questions of dependency must be determined by the board of awards. If it be found that there were dependents at the time of death, then the board must determine the average weekly wage of the deceased. If it is found that there were wholly dependent persons at the time of death (as in the instant case, the award having been made to relatrix’s intestate as sole dependent), then the board can make no determination or finding as to the amount of the compensation which must be awarded; that is fixed by law in a sum certain. See Section 35, paragraph 2. The payment shall be two-thirds of the average weekly wage, and to continue for a period of six years, and not to exceed $3,750, nor is it to be less than $1,500. There are no qualifying words whatever. The board’s duty, after finding the existence of de *439 pendents, is but to make a calculation. It is entirely without discretion in the premises.
The statute, in fact, orders that in the case of wholly dependent persons the payment, subject to the fixed maximum and minimum, must be a certain definite sum (two-thirds of the average weekly wage) multiplied by a certain definite figure (six times fifty-two weeks).
Thus, in the case now before the court the board awarded the defendant $1,872, to be paid in biweekly installments of $6 a week, and to continue for a period of six years from the date of the death of the employe.
This paragraph of Section 35 is practically conclusive of the case, as it has every element necessary to confer a vested right. A fixed amount is awarded to a definite person as a matter of right, with no language suggesting in anyway an abatement of the award on the death of the person to whom it is made prior to the payment of the same in full, and we must hold that it speaks for itself, unless some other section or sections of the act condition or limit the right to this compensation.
Section 36 is not applicable to the instant case. It only has application where there are plural dependents, and while it provides for the determination by the board as to the manner in which the benefits or compensation may be apportioned among the several dependents and to which one the payments shall be made for the benefit of all, it gives no discretion whatever to alter the amount of the award so fixed nor to abate any part of the same.
*440 Sections 39, 40 and 41 of the act provide as follows:
“Section 39. The powers and jurisdiction of the board over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto, as, in its. opinion may be justified.
“Section 40. The board, under special circumstances, and when the same is deemed advisable, may commute periodical benefits to one or more lump sum payments.
“Section 41. Compensation before payment shall be exempt from all claims or creditors and fr@m any attachment or execution, and shall be paid only to such employes or their dependents.”
It is urged by. the attorney general that Secti®n 39 must be construed as giving the board continuing power and jurisdiction over the compensation when awarded, so that in case of the death of dependent it can abate the balance due under the award, if any, and revert the same to the state insurance fund.
That such was the intention of the legislature is not apparent from the section. We do not think findings and orders which may be changed mean findings and orders which are definitely fixed by law and as to which the board of awards has no discretion.
If the deceased employe left a widow who was living with him at the time of his death, the board must find that she was wholly dependent upon her deceased husband and must make a certain award *441 of compensation to her. The questions of dependency and amount of award in such case are both determined absolutely by the statute. The board can only act formally and must so act. If Section 39 gave power to modify, alter or amend the finding as to the amount of the compensation or its payment, it would do so likewise as to the question of dependency. There are many findings and orders of the board to which Section 39 is plainly applicable and for which it was no doubt intended — thus, in Section 32, in cases of temporary disability; Section 33, in cases of partial disability; Section 34, in cases of permanent total disability; Section 35, in the matter of commuting periodical payments to one or more lump-sum payments; Section 36, in the matter of the apportionment of compensation, etc.
Section 34, providing for compensation in case of permanent total disability, presents a very strong, if not conclusive, indication that the amount awarded under paragraph 2 of Section 35 vests in the dependent, and that Section 39 is without application. Section 34 provides in part that in cases of permanent total disability the award shall be two-thirds of the average weekly wage, and shall continué until the death of such person so totally disabled.
In paragraph 2 of Section 35 the words “until the death of such person” (dependent) are omitted, and substituted therefor, after the words “to continue,” appears the phrase, “for the remainder of the period between the date of the death, and six years after the date of the injury.”
*442 As both of these sections were enacted by the same legislature, at the same time, as part of the same act and upon the same subject, it must be conceded that the legislature had before it the question of the abatement of an award upon the death of a dependent, and as it provided for such abatement in one instance and failed to do so in another, its action must be deemed intentional and that Section 39 cannot be construed to be equivalent to the words “until the death of such person,” or similar words, omitted after the phrase “to continue” in paragraph 2 of Section 35, or to vest in the board of awards the power to read in such words.
If Section 39 could be construed as giving the board power to abate an award made under paragraph 2 of Section 35, in case of the death of' dependent prior to completion of payments, it necessarily follows that it could be construed also as giving the board power and jurisdiction to determine dependency at any time during the period covered by the payments, instead of having its determination expressly limited by the statute, as it is, to dependency at time of death, and, although the statute is inflexible as to amount of award, abate the award at any time the person to whom the compensation was granted ceased to be a dependent. This construction would be directly contrary to the statutory requirements.
If this construction were possible, the board, having power to abate compensation, must necessarily keep a strict watch over each case, numbering many thousands, so as to discontinue payments as soon as dependency ceases to exist. Such con *443 struction would render Section 40 of very doubtful, if any, value, for in each case there would be the possibility of the death of the dependent during the period and the consequent reversion to the insurance fund of all unpaid installments, and the board would certainly hesitate to commute periodical payments to a lump sum and thus lose the increment to the fund in case of death of dependent. This would be a distinct backward step toward the old system which resulted in passage of the act. In fact, it is difficult to conceive the theory on which periodical payments can be commuted if the right to the entire award does not vest when made in the dependent. The word “commute” in this section must mean that the,board by commuting the payments pays the dependent something less than he otherwise would receive. So, if the construction contended for by the state were adopted, it would mean that the board, when it made a lump-sum-award, not only gave .dependent something to which he was not entitled and might never be entitled, but also, instead of commuting the award, actually increased it. Section 41 exempts “compensation before payment” from attachment and execution. If compensation were not vested, then there could be neither attachment nor execution, and this section would be. without meaning, unless we should, add after the word “compensation” the words “and each installment thereof after it has become due and payable.”.
Since Section 35 is entirely clear and unambiguous and is consistent with Sections 39, 40 and 41, the court is not authorized to legislate under the *444 guise of statutory construction and upon the theory that the legislature intended, or should have intended, that the compensation awarded under paragraph 2 of Section 35 should abate at the death of dependent, thus changing the plain wording of the statute.
The language' of this part of the section, as we have pointed out, is that the payment shall be two-thirds of the weekly wage and to continue for the remainder of the period between date of death and six years after the injury. As stated by Donahue, J., in Sipe, Auditor, v. State, ex rel., 86 Ohio St., 80, 87, “That intent [of the legislature] must be ascertained first, if possible, from the language used and where that language is clear and unambiguous courts have no authority to change it.” Citing King v. Greenwood Cemetery Assn., 67 Ohio St., 244; Hough v. Dayton Mfg. Co., 66 Ohio St., 427; Slingluff v. Weaver, 66 Ohio St., 621.
In the last-cited case, Spear, J., uses language applicable here, when he says: “To endeavor to make this plainer would be like an effort to reason upon a sum in simple addition. * * * The province of construction is to arrive at the true sense of the language of the act, not to supply language to help out a conjectured intent, not to be gathered from the words used. * * * The words asked to be incorporated would be the words of the expounders and not of the lawmakers.'”
The only construction that can justifiably be given paragraph 2 of Section 35, in the case of a sole dependent, is the plain meaning of the words used. There is no authority under any rule of *445 statutory construction to add to, omit or change the words used. Compensation is awarded in a definite sum, with no conditions attached except that the payments are to be periodical.
There seems to be no decision of an American court upon this question arising under workmen’s compensation statutes, but long ago this court decided a question which in principle is quite similar. The case of Dorah’s Admr. v. Dorah’s Exr., 4 Ohio St., 292, presented the question whether the allowance made by the appraisers to a widow for her year’s support conferred a vested right of property in such widow, so that, in case of her death before the expiration of the year and before the entire allowance had been paid, her personal representative could recover the balance. The court held that the entire amount vested, when the allowance was made, and the balance remaining unpaid, though, on account of the death of the widow, impossible of application for which it was intended, could be recovered. Ranney, J., in his opinion used language and reason applicable to the case we are considering. He says, after pointing out that if the amount ■allowed did not vest then, if it had been paid, part could be recovered back by the estate upon the death of the widow prior to the expiration of the year, or a proportionate amount in case of the death of a child when the allowance had been made to a widow and minor children:
“We can see no reason to suppose, that it was ever intended to allow a recovery back of any part of the amount, upon the happening of such a contingency [death of a child]; * * * To allow *446 such a deduction, either by giving an action to the administrator to recover it back where it has been paid, or by permitting him to withhold it where it has not, is to introduce the most perplexing uncertainty as to the rights of the widow and the duties of the administrator, * * * With the 'construction we adopt, the rights and duties of all concerned are clear, definite, and fixed. It gives to the widow and children a paramount claim upon enough of the estate to support them for one year, over creditors and distributees; and where it has been fixed or set apart by the appraisers, or by the court on review, effectually withdraws it from the balance of the estate, and has all the force and effect of an adjudication in their favor. It confers a vested right of property, conclusively disposes of so much of the estate, and leaves no discretion to the administrator as to complying with it.”
The right of the dependent to whom an award has been made under paragraph 2 of Section-35 is clearer than that of a widow to whom an allowance has been made on her year’s support. The compensation is awarded to the dependent in a fixed sum out of an insurance fund provided wholly for the purpose of paying such compensation. This award effectually withdraws the amount awarded from the fund and makes it exempt from execution and attachment. Any other holding would introduce ' into the administration of the workmen’s compensation act most perplexing uncertainty both as to the rights of dependents and the duties of the board of awards.
*447 The precise question involved in this case has been before the courts of England, and it is the holding there, not only that an award of compensation to a dependent vests on allowance, but that the right to claim an award vests in the dependent at the time of death of the employe, and if dependent dies before presenting such claim the personal representative of a dependent may make the claim and recover upon it. While the English acts are different from ours in many respects, an examination of the cases to which we now refer and to the statutes will show that the same question was before the English courts as is presented by the instant case, and that practically the same reasons were advanced in opposition to the theory which the court adopted as are now advanced by counsel for the state.
In the case of The United Collieries v. Simpson, Appeal Cases (1909), 383, the House of Lords held that where a workman has been killed by an accident arising out of and in the course of his employment, and his dependent dies without making a claim, the dependent’s legal personal representative is entitled to compensation under the workmen’s compensation act of 1906.
At page 389, Lord Loreburn says: “The eighth paragraph also contemplates payment to a dependent. And though the ninth [similar to Section 39 of the Ohio act as to apportionment of benefits] reserves a power to vary the apportionment, neither it nor any other paragraph proceeds upon any other view than that there is a definite right on the part of dependents as a class to the money, subject to a *448 parental power of the court in dividing and applying it for their advantage.” The dissenting opinion of Lord Dunedin is interesting because it shows that the court had before it the objection that payments to a personal representative were not authorized because the law provides only for payment to dependents. This case expressly approves the case of Darlington v. Roscoe & Sons, 1 K. B. (1907), 219, where it was held that if a notice of claim under the workmen’s compensation act of 1897 has been given by a sole dependent, who. dies before a request for arbitration is made or other proceedings are taken, the right to claim survives to such dependent’s legal personal representative and the maxim actio personalis moritur cum persona does not apply.
The only case we have been able to find advancing a contrary view is that of In re O’Donovan & Cameron, Swan & Co., 2 Ir. R. (1901), 633, where it was held: “The sole total dependent of a workman, who was killed by an accident arising out of his employment, died before she had filed or served a claim for compensation under the Workmen’s Compensation Act, 1897. Had she had lived, and taken the necessary steps to recover it, she would have been entitled to £150 compensation. The personal representative of the deceased workman subsequently took proceedings * * * to recover compensation, to be applied for the benefit of the dependent, and in payment of her debts: Held, that neither her personal representative nor the personal representative of the deceased workman was entitled to recover the amount.”
*449 •This case was distinctly disapproved by the tíottse of'Lords in The United Collieries v. Simpson, supra.
Thus in England the authority is all in favor of the view that the right to compensation vests in the dependent at the time of the death of the employe and is transmitted to his personal representative even though the dependent has died without having made a claim for compensation. And this is a much more doubtful question than that before us, where the claim has been filed, compensation awarded and part payment made before death of dependent.
The English cases emphasize the fact that a fixed sum is provided by the act and no provision made for a refund of any part of the award, and that in the case of a dependent dying before the compensation is exhausted the absence of such a provision shows that when once the compensation is fixed there is to be no refund.
The question here, by the application of the most elementary rule of statutory construction, is settled by the statute. It speaks for itself, and there is no ambiguity. It is also settled by all the adjudicated cases on the subject-
But were it necessary to go outside of the statute to sources which we may consider, the result is even more conclusive.
Let us start at the beginning of workmen’s compensation in Ohio. On May 10, 1910, the general assembly passed an act (101 O. L., 231) authorizing the governor to appoint a commission of five persons, representative of both employers and employes, to investigate the subject of a direct-com *450 pensation law and to- report to the next session of the general assembly the result of their investigation, together with a bill or bills providing for the speedy remedy for employes for injuries received in the course of their employment. This commission, of which Mr. J. Harrington Boyd was chairman, filed its report with the legislature in January, 1911.
This report is a remarkable document, probably ■the most valuable report ever submitted by an investigating committee or commission to the general assembly. It goes into the subject of workmen’s compensation from every conceivable angle, gives the result of investigations with the greatest detail, together with a complete statement of the causes which' have brought about workmen’s compensation, and a full explanation of the laws of other states and countries, and produces an array of facts in regard to industrial accidents which is appalling.
The conclusions of this commission were admirably summed up by Johnson, J., in his opinion in State, ex rel., v. Creamer, supra, at page 389. And the theory upon which the compensation law is based (which is now generally accepted) is that each time an employe is killed or injured there is an economic loss which must be made up or compensated in some way, that most accidents are attributable to the inherent risk of employment — that is, no one is directly at fault — that the burden of this economic loss should be borne by the industry rather than by society as a whole, that a fund should be provided by the industry from which a fixed sum should be set apart as every accident oc *451 curs to compensate the person injured, or his dependents, for his or their loss.
The commission recommended that a compensa-. tion plan of this kind be adopted not as “in any sense charity but only simple justice.”
The commission filed with its report, for the consideration of the general assembly, two tentative acts, one suggested by a majority of the commission and the other by a minority member. Section 8 of the majority bill provides for compensation in case of death, and is in substance the same as Section 35 of the present act. Section 13, paragraph b, provided: “The compensation awarded shall never be vested except subject to such changes as the provision of this code allow.”
Section 20 (the section on which present Section 39 is based) provided:
“The said state board of compensation awards shall have entire jurisdiction of the disbursement of the insurance fund provided for in this code, and of determining the validity of all applications for compensation out of said fund, and of fixing the amount of the award in each instance; but so long as the award or any part of it remains unpaid their jurisdiction as to the amount of such award and as to the person in any particular class of beneficiaries to which the same shall be payable shall be continuing so that they may have power to make such changes therein as the circumstances may warrant, and as right and justice may require.”
This proposed section reads, it is to be presumed, about as the state would have us now read Section 39.
*452 In the bill submitted by the minority, the following sections appeared: Section 28, providing compensation in case of death, is practically similar to present Section 35; Section 33, providing that “The power and jurisdiction of the board over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion, may be justified.”
Both bills were before the legislature, and at the same session at which the report was submitted the original compensation act was passed, Sections 28 and 33 of which (except for the maximum and minimum amounts) are identical with Sections 35 and 39 of the present act.
It is thus apparent that the legislature, having before it the proposition of limiting payments to the lifetime of dependents and of granting power to the board to change awards so long as any part of- it remained unpaid, by rejecting Section 20 of the act proposed by the majority and by accepting Section 33 of the minority measure, clearly indicated its intention as to this matter, and in rejecting Section 13 (paragraph b of the majority measure) it refused to provide that “compensation awarded shall never be vested.”
The only fair inference to be drawn is that the legislature intended that compensation, under paragraph 2 of Section 35, should be vested in the dependent when awarded. Again, this law was passed not in a spirit of “charity” but only 'simple justice. The fund it provides is called, and is in fact, an “insurance” fund, from which payments *453 are to be made, and is in no sense a pension fund, and never, so far as we are aware, has it been contended that injured employes and their dependents were not entitled to compensation as a matter of right.
The right to be compensated for an injury has no element of bounty or charity about it. No part of the fund (except such part as it pays for the protection of its own employes) is contributed by the state.
As we have before stated, the theory is that when an employe is injured or killed in course of his employment, a sum fixed by law is set off from the fund to compensate him for his injuries, or his dependents for his death, to compensate for taking away the man’s right to earn a livelihood, which, but for the accident, he would have earned. A fixed sum goes out from the fund to compensate for the loss which has occurred.
In case of death with no dependents, there is no loss to anyone except the employe other than the expenses provided for by the statute, which would otherwise fall on society. In case of dependents, the sum is likewise fixed by law and ordered paid to the dependent. There is nothing to indicate that this loss is to be compensated in part by the death of dependents and the part thus compensated to be returned to the state. On the contrary, the only situation considered is that existing at the date of death. At that time the amount is fixed, not by the board but by the statute; it is set apart from the general fund, may be paid in lump sums and there is no provision whatever for rebate.
*454 Thus, the payments being fixed in amount, ordered paid from a certain fund and awarded to a .definite person, every element of a vested right is present and no element or suggestion of a pension that is to cease at the death of the pensioner.
The report of the investigating commission, as well as all of our compensation laws and reports, shows that the provision for periodical payments is solely for the benefit of the injured employe or dependents, for the reason that experience teaches that in a very great many cases a lump sum, if allowed, is dissipated, while small payments, on the other hand, are carefully husbanded.
It may also be noted that the words “insurance fund,” “compensation,” “award” and “commutation,” all negative the idea of a pension or rebate of any kind.
The intent apparent and expressed throughout the act that compensation is to be paid only to dependents, was not for the purpose of securing an abatement of unpaid compensation upon the death of a dependent. The purpose is to insure that compensation shall go intact to the injured employe or his dependents without any shrinkage by passing through' or into the hands of assigns, agents, attorneys, friends or relatives, it being common knowledge that if a sum of money on its journey from the one from whom to the one to whom it is due passes through the hands of others it is inevitable that it suffer diminution, sometimes almost to the vanishing point.
We hold that when the award is once made to a sole dependent the right to the compensation vests, *455 and once vested there can be no condition attached except as to the time of payment, and it is equally immaterial whether the dependent subsequently dies or becomes independent.
As to the argument that unless a rebate or refund is allowed in case of death of dependent a great wrong is done the injured and dependents of killed employes, it is perhaps sufficient to say that the assumption upon which this argument is based is utterly opposed to the theory on which the fund is established, maintained and administered. It is so plain as to be beyond all argument that the fund is provided to compensate in the manner and amount fixed by law for all losses which it covers; that it was never intended that the fund should be enhanced by lapses; that there.is no conception of .profit in the plan, and no one entitled to an award can have his right affected at all, either as to amount or in any other manner, by the allowance or denial of the claim of any other person to compensation. A study of the act will show that it is the duty of the board to provide an adequate fund .to pay all the compensation provided by the act. What amount will be necessary is calculated by the board, the theory being that all losses will be and must be paid in full; the methods of establishing the fund and the sources from which the money is to come are specified, and nowhere, even by inference, is the board authorized to speculate that a greater or less sum will be needed on account of unpaid or partly unpaid awards.
Both the letter and spirit of the law show that the right to compensation vests when the same is *456 awarded under paragraph 2 of Section 30, and the demurrer to the petition is therefore overruled.
As the board in this case awarded the dependent the sum of $1,872 and ordered the same paid in biweekly installments at the rate of $6 per week, to continue for six years from the date of the death of the employe, it has, in making the award, fully complied with the law, and the court is without power to require it to commute the balance remaining due to one lump sum. That is a matter, under Sections 39 and 40, wholly within the discretion of the board, but the petition shows that the board has refused to pay to relator any part of the award since the death of the dependent or to continue the bi-weekly payments. The writ therefore must order the board to pay to relator the sum of the bi-weekly payments which have accrued since dependent’s death and to continue such payments until the full amount originally awarded is fully paid unless commutation is ordered by the board.

Demurrer overruled and writ awarded.

Johnson, Wanamaker and Newman, JJ., con-